**MOUNTAIN STATES MUTUAL CASUALTY COMPANY,**
Plaintiff–Appellee,

v.

**Heidi HAUSER, Defendant–Appellant.**

No. 08CA1968.

Colorado Court of Appeals,
Div. V.

July 23, 2009.

Certiorari Dismissed Oct. 16, 2009.

Zupkus & Angell, P.C., Robert A. Zupkus, Natalie M. Lucas, Denver, Colorado, for Plaintiff–Appellee.

Wilcox & Ogden, P.C., Ralph Ogden, Denver, Colorado; Metier Law Firm, LLC, Patrick DiBenedetto, Fort Collins, Colorado, for Defendant–Appellant.

Opinion by Judge RICHMAN.

Heidi Hauser appeals the summary judgment in favor of Mountain States Mutual Casualty Company (Mountain States) on its request for a declaratory judgment against its insured, Mulligan's, Inc., Hauser's former employer. Hauser intervened as a defendant in the declaratory judgment action, seeking to obtain payment from Mountain States as the insurer on a default judgment awarded in her favor against Mulligan's for negligently hiring, supervising, and retaining its manager, who sexually assaulted her. We affirm.

## I. Background

Hauser worked as a waitress at Mulligan's restaurant. Luke Gondrezick, the son and nephew of the restaurant owners, was the supervising manager. On the night of June 7, 2003, Hauser and a co-worker went to Gondrezick's residence after finishing work to report that they had witnessed another employee stealing tips. Hauser alleged that when the co-worker left the room, she went outside, where Gondrezick sexually assaulted her.

Hauser filed suit against Gondrezick, alleging outrageous conduct, and against Mulligan's, claiming liability for negligent hiring, negligent supervision, and negligent retention of Gondrezick. Larimer County District Court Case No. 05CV903. She also asserted that Mulligan's was responsible for Gondrezick's acts under theories of respondeat superior and vicarious liability.

Hauser never served Gondrezick, and no judgment was obtained against him. By the time she served Mulligan's, it had filed for bankruptcy. Hauser obtained relief from the stay in the bankruptcy court to pursue a damage award to the extent of Mulligan's general liability insurance policy issued by Mountain States.

Although it had notice of the case, Mountain States declined to provide a defense for Mulligan's. Mulligan's did not answer or file any responsive pleading to Hauser's suit. The district court entered default judgment against Mulligan's and, after an evidentiary hearing, awarded total damages of $873,380.16. The damage award included $50,000 in punitive damages, in support of which the court found that Mulligan's conduct was willful, wanton, and reckless because it "knew full well what was potentially going to happen with [Gondrezick] and the female employees and did not care."

Mountain States filed this action against Mulligan's seeking a declaratory judgment that Hauser's lawsuit did not trigger coverage under the policy, such coverage was also precluded by the exclusions in the policy, and therefore Mountain States had no duty to defend or indemnify Mulligan's. Larimer County District Court Case No. 06CV338.

Mulligan's did not answer or file a responsive pleading, and the court entered default judgment in Mountain States' favor. Later, the court granted Hauser's motion to set aside the default and permitted her to intervene as a defendant. Hauser filed an answer and counterclaim against Mountain States seeking a declaration of insurance coverage.

Mountain States and Hauser filed cross-motions for summary judgment arguing that the material facts were not in dispute and requesting declarations as to the scope of coverage under the Mountain States policy. After hearing oral arguments, the court entered summary judgment in favor of Mountain States and against Hauser, ruling that "Mulligan's, and thus Hauser, are not entitled to coverage under the Policy for the judgment entered in 05CV903." This appeal followed.

## II. Standard of Review and Applicable Law

We review de novo a grant of summary judgment. *Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 146 (Colo.2007). We also review de novo the interpretation of an insurance contract. *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo.1999).

If the words of an insurance policy are not ambiguous, they should be given their plain and ordinary meaning, unless the parties expressly intended an alternative interpretation. *Id.* If a contractual provision is reasonably susceptible of different meanings, it must be construed in favor of providing coverage to the insured. *Id.* (citing *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo.1990)). However, a mere disagreement between the parties regarding the meaning of a policy term does not create an ambiguity. *State Farm Mut. Auto. Ins. Co. v. Stein*, 940 P.2d 384, 387 (Colo.1997).

Although coverage provisions in an insurance policy are liberally construed in favor of the insured, courts should be wary of rewriting provisions. *Fire Ins. Exch. v. Bentley*, 953 P.2d 1297, 1300 (Colo.App.1998). "Courts may neither add provisions to extend coverage beyond that contracted for, nor delete them to limit coverage." *Cyprus Amax*

*Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294, 299 (Colo.2003).

Further, courts should read the provisions of an insurance policy as a whole, rather than reading them in isolation. *Id.* Accordingly, we construe the policy so that all provisions are harmonious and none is rendered meaningless. *Progressive Specialty Ins. Co. v. Hartford Underwriters Ins. Co.,* 148 P.3d 470, 474 (Colo.App.2006).

When a plaintiff files a complaint against an insured alleging claims that may fall within the coverage of the insured's policy, the insurer has a duty to defend. *Hecla Mining Co. v. New Hampshire Ins. Co.,* 811 P.2d 1083, 1089 (Colo.1991). "[C]ourts must look no further than the four corners of the underlying complaint" to determine whether this duty exists. *Cyprus,* 74 P.3d at 299. "Where there is no duty to defend, it follows that there can be no duty to indemnify." *Constitution Assocs. v. New Hampshire Ins. Co.,* 930 P.2d 556, 563 (Colo.1996).

## III. Policy Provisions

Two coverages of the policy at issue are relevant to this appeal. "Coverage A. Bodily Injury and Property Damage Liability" provides indemnity coverage to Mulligan's for "sums [it] becomes legally obligated to pay as damages because of bodily injury . . . to which this insurance applies." The insurance applies to "bodily injury" only if it is caused by an "occurrence" that takes place in the coverage territory and during the policy period. There is no dispute here that the claim arose during the policy period and occurred within the coverage territory as defined in the policy.

The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy does not define "accident"; however, Colorado courts interpret the word "accident" in a commercial general liability policy to mean "an unanticipated or unusual result flowing from a commonplace cause." *Union Ins. Co. v. Hottenstein,* 83 P.3d 1196, 1201 (Colo.App. 2003). The dictionary defines "accident" as "an event or condition occurring by chance" or "an unforeseen unplanned event or condition." *Webster's Third New International Dictionary* 11 (2002).

"Coverage B. Personal and Advertising Injury Liability" provides coverage for sums the insured becomes legally obligated to pay as damages because of personal and advertising injury to which the coverage applies. The policy defines "personal and advertising injury" as "injury, including consequential 'bodily injury,' resulting from . . . [f]alse arrest, detention or imprisonment."

In addition to concluding that the assault was not an "occurrence" as defined by the policy, the trial court determined that three exclusions in the policy barred Hauser's recovery of damages from Mountain States. First, the policy excludes coverage for "expected or intended injury," providing that the insurance does not apply to bodily injury "expected or intended from the standpoint of the insured." Second, the policy excludes coverage for employer liability for bodily injury to an employee of the insured "arising out of and in the course of employment by the insured." Third, the policy excludes coverage for "employment-related practices," namely, bodily injury or personal and advertising injury to a person arising out of "[e]mployment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person."

## IV. Arguments on Appeal

Hauser contends that Gondrezick's sexual assault upon her was an "occurrence" under the bodily injury coverage of the policy and that none of the policy's exclusions precludes coverage. She also contends that she is entitled to recovery under the express terms of the personal and advertising injury liability coverage because she pleaded facts which constitute a claim for false imprisonment in her amended complaint in the case against Gondrezick and Mulligan's. We disagree with both contentions.

### A. Coverage for an "Occurrence"

Hauser argues that the terms "occurrence" and "accident" are ambiguous and therefore

must be broadly construed against the insurer, relying in part on *Colard v. American Family Mutual Insurance Co.*, 709 P.2d 11, 13 (Colo.App.1985). She argues further that even though Gondrezick's conduct was clearly intentional, the assault was accidental from Mulligan's point of view. We are not persuaded that the plain meaning of either "occurrence" or "accident" encompasses this intentional assault, even if negligent hiring, negligent supervision, or negligent retention of Gondrezick created the potential for Hauser to be injured.

■ Although Hauser is correct that Colorado courts recognize the torts of negligent hiring and supervision, *see, e.g., Keller v. Koca*, 111 P.3d 445 (Colo.2005), courts applying Colorado law have not specifically addressed the definition of "occurrence" or "accident" under a comprehensive general liability policy in the context of intentional conduct by a negligently hired or supervised employee.

At least one court in another jurisdiction that reached the issue concluded that coverage does not exist. In *American Empire Surplus Lines Insurance Co. v. Bay Area Cab Lease, Inc.*, 756 F.Supp. 1287, 1290 (N.D.Cal.1991), a cab company employee sexually molested a passenger. The court found no liability under the company's liability policy. The court ruled that even if the company's negligence in hiring the employee was the occurrence which gave rise to the passenger's injuries, it was not a risk covered by the policy since it was not an "accident." The court held that the hiring "merely created the potential for injury" but was not itself "the cause of the injury." *Id.* In the court's words, "Negligent hiring/supervision is not an 'accident.'" *Id.* at 1289; *see also Mattress Discounters of New York, Inc. v. U.S. Fire Ins. Co.*, 251 A.D.2d 384, 385, 674 N.Y.S.2d 106, 106–07 (1998) ("[T]he inclusion in the underlying complaint of causes of action to recover damages for negligent hiring and negligent supervision does not alter the fact that 'the operative act giving rise to any recovery is the assault.'").

In *Farmers Alliance Mutual Insurance Co. v. Salazar*, 77 F.3d 1291, 1294 (10th Cir.1996), the court, applying Oklahoma law in a case of first impression, interpreted a homeowner's insurance policy that used similar language to define a covered "occurrence." There, the parties stipulated that the policy holder had been negligent in supervising her son by permitting him to possess two guns, which her son and a friend used to commit first degree murder. *Id.* The trial court concluded that from the standpoint of the insured the murder was an "occurrence," obligating the insurer to defend and indemnify its insured. The Tenth Circuit reversed, concluding that because intentional murder is not an "accident," it does not qualify as an "occurrence" under the policy. *Id.* at 1297.

In reaching this result, the court noted that it was "well-settled ... that the time of an occurrence of an accident, within the meaning of a liability indemnity policy, is not the time when the wrongful act was committed, but the time when the complaining party was actually damaged." *Id.* at 1296 (quoting *Friendship Homes, Inc. v. Am. States Ins. Cos.*, 450 N.W.2d 778, 780 (N.D.1990)). Thus, the court concluded that "when determining whether a bodily injury was 'caused by an occurrence' the question of whether there was an 'occurrence' should be resolved by focusing on the injury and its immediately attendant causative circumstances." *Id.* Although *Salazar* was decided by application of Oklahoma law, we find its reasoning persuasive and applicable here. The incident that caused Hauser's injury was the sexual assault, and as she admits, the immediate cause of her bodily injury was Gondrezick's intentional conduct.

Hauser cites no case where an intentional act of sexual assault constituted an "accident" or "occurrence" within the meaning of a comprehensive general liability policy. Rather than resort to "head-spinning judicial efforts at definition," we conclude that the common understanding of an "accident" does not include the assault that occurred here. *See Senkier v. Hartford Life & Accident Ins. Co.*, 948 F.2d 1050, 1053 (7th Cir.1991) ("A person can tell time without being able to define 'time' and he [or she] can know how to ride a bicycle or shoot pool without being able to explain the principles of physics that

enable him [or her] to do these things."). In short, though there are various ways to describe what happened to Hauser, it was not an "accident."

Hauser argues that under the "separation of insureds" clause in the policy we must look at the events from the insured's point of view, and that although Gondrezick's conduct was intentional, from Mulligan's vantage point it was an accidental result of its negligent hiring. The "separation of insureds" clause provides that the policy coverage applies "[s]eparately to each insured against who claim is made or 'suit' is brought." Assuming without deciding that Mulligan's intent is relevant, that still would not change our analysis on the facts presented here because both Hauser's allegations in her case against Mulligan's and Gondrezick and the findings by the trial court at the damages hearing in that case undermine her position.

In pleading that Mulligan's engaged in negligent hiring, supervision, and retention, Hauser alleged that Gondrezick "had a history of committing violent crimes and had a propensity for mistreating and assaulting female employees," and that Mulligan's knew or should have known of his dangerous propensities because of his reputation among its employees for his violent and abusive demeanor. She further alleged that Mulligan's knew or should have known of Gondrezick's abusive and violent conduct toward women he was supervising because, at the time Hauser was assaulted, he was under investigation for no fewer than three other sexual assaults. According to Hauser's allegations, Mulligan's knew of at least one incident when Gondrezick had assaulted another Mulligan's employee.

The trial court determined that evidence presented by Hauser at a damages hearing supported her various claims as well as her contention that Mulligan's acted willfully and wantonly. In the court's words, Mulligan's "knew full well what was potentially going to happen with their son and the female employees and did not care." *See State Farm Mut. Auto. Ins. Co. v. Brekke,* 105 P.3d 177, 185 (Colo.2004) ("As a general rule, a default judgment has the same effect as final judgment after a formal trial.").

■ Thus, Hauser alleged and proved that Gondrezick's conduct was foreseeable and not unexpected on Mulligan's part. Under such circumstances, we cannot conclude that the negligent hiring and supervision by Mulligan's was an "occurrence" or "accident" within the meaning of the policy.

■ Moreover, even if the negligent hiring and supervision were an "occurrence" as defined in the policy, these facts and determinations demonstrate that Hauser's damages fall within the "expected or intended injury" exclusion of the policy. In a negligent hiring claim, "foreseeability of harm to the plaintiff is a prime factor in the duty analysis." *Raleigh v. Performance Plumbing & Heating, Inc.,* 130 P.3d 1011, 1016 (Colo.2006). Though we need not determine whether an injury resulting from the foreseeable harm in a negligent hiring or supervision case could ever be found to be "unexpected" under an insurance policy provision in different circumstances, based on the facts and determinations of the trial court as set forth above, the sexual assault in this case cannot be considered unexpected from Mulligan's vantage point.

In *State Farm Fire & Casualty Co. v. Compupay, Inc.,* 654 So.2d 944 (Fla.Dist.Ct. App.1995), the court found no duty to defend an insured employer under a comprehensive liability policy where the definition of occurrence excluded expected or intended conduct from the standpoint of the insured. The complainant, an employee of the insured, alleged she was sexually assaulted by the insured's supervisory employee, and the employer had ignored her prior protests and complaints about the supervisor's continuing pattern of sexual harassment. The court concluded that since the complaint alleged that the supervisor's acts were "specifically and intentionally directed" at the plaintiff, the events were not an accident and not an occurrence as defined in the policy. *Id.* at 946–47.

Hauser's citation to cases holding that insurers may not limit coverage against intentional acts in automobile insurance policies is inapposite. In *State Farm Mutual Automobile Insurance Co. v. McMillan,* 925 P.2d

785, 793 (Colo.1996), the court held that the insurer could not circumvent statutory minimum coverage requirements for uninsured motorist coverage by attempting to deny coverage for intentional, as opposed to negligent, acts. In *Metropolitan Property & Casualty Insurance Co. v. Neubert*, 969 P.2d 733, 735 (Colo.App.1998), a division of this court relied on *McMillan* for the proposition that "whether injuries arise from an accident, even though they directly result from an intentional act, is to be determined from the insured's point of view." These cases apply in the uninsured motorist context, where the General Assembly has required insurers to offer a specified level of coverage, *see, e.g.*, § 10–4–609, C.R.S.2008, and no analogous statutes pertain to comprehensive general liability insurance.

Nor has Hauser cited any case, and we aware of none, in which the "continuous or repeated exposure to substantially the same general harmful conditions" provision has been applied to include a co-worker's intentional acts.

Therefore, because Hauser's injuries were not the result of an "occurrence" as defined by the policy, or were excluded as an "expected injury," liability for her bodily injury does not exist under this coverage. We need not address the other exclusions relied on by the trial court.

### B. Coverage for "False Imprisonment"

 Hauser separately argues that Mountain States has a duty to indemnify Mulligan's under the personal and advertising injury coverage, which applies to bodily injury resulting from, inter alia, false imprisonment. Although she did not plead false imprisonment in her amended complaint against Mulligan's, she argues that she pleaded facts which support a false imprisonment claim and thus were sufficient to trigger a duty to defend and indemnify. Specifically, she alleged:

16. As Plaintiff Hauser was struggling to free [herself] from Defendant Gondrezick, [Hauser's co-worker] returned to the room; she saw that everyone had left and called out for them. [The co-worker's] shout disrupted the Defendant's attack and the Plaintiff was able to escape back into the house. Plaintiff Hauser immediately asked [her co-worker] to take her home and then she locked [herself] in a bathroom. She called her boyfriend [ ] from the bathroom to come and pick her up.

17. Plaintiff Hauser was terrified, disheveled and visibly shaken. Before she could leave though, Defendant Gondrezick propositioned her to accompany him to his room.

We conclude Hauser is not entitled to coverage under the false imprisonment provision for two reasons.

First, in its default judgment order, the court made no finding of false imprisonment. Rather, the court determined "that the evidence presented in this matter by [Hauser] clearly support[ed] the various claims in her [c]omplaint in terms of negligence, negligent hiring, supervision, and negligent retention, on the part of Mulligan's, Inc. and support[ed] the allegations regarding the conduct of Defendant Luke Gondrezick." Because there was no finding of false imprisonment, and no damages were awarded on this cause of action, the default judgment does not support a conclusion that Hauser is entitled to have Mountain States indemnify any damages actually awarded.

 Second, even if the allegations had stated a claim for false imprisonment by Gondrezick, the claim would be against Gondrezick, as Hauser expressly states in her brief on appeal, not Mulligan's. Under the policy coverage, Mountain States is only liable to indemnify amounts for which Mulligan's became liable, and Mulligan's would be liable for false imprisonment by Gondrezick only under a theory of respondeat superior. However, no such claim was proved against Gondrezick, nor was a judgment for false imprisonment obtained against Gondrezick, and therefore no respondeat superior liability fell upon Mulligan's. Hence, Mountain States had no obligation to indemnify Mulligan's under such coverage even if a claim for false imprisonment were extrapolated from Hauser's pleadings.

### V. Conclusion

As there are no genuine issues of fact as to whether Hauser is entitled to recover damages under the policy on the theories she has presented, and because the trial court correctly interpreted the applicable insurance policy provisions, it properly granted summary judgment in favor of Mountain States and properly denied Hauser's cross-motion for summary judgment.

The judgment is affirmed.

Judge GRAHAM and Judge HAWTHORNE concur.