**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 22, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MICHAEL R. BROWNING; DEANNA D.
BROWNING,

      Plaintiffs - Appellants,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY, a Wisconsin
corporation,

      Defendant - Appellee.

No. 09-1375

(D. Colo.)
(D.C. No. 1:08-CV-02317-MSK-BNB)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Circuit Judge, **HAWKINS**[**] and **O'BRIEN**, Circuit Judges.

Michael Browning's response to a property dispute was, even most charitably

regarded, extreme. He threatened his neighbors, David and Brenda Reichles, with

---

[*] This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). Id.

[**] Honorable Michael Daly Hawkins, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

violence and punctuated his threats with gunfire.  Reichles sued both Michael and his

wife.  Brownings asked American Family Mutual Insurance Company (American

Family) to pay for their defense of Reichles' claims.  When it refused, Brownings sued in

Colorado state court claiming a breach of their homeowner's insurance contract.

American Family removed the case to federal court.  Brownings unsuccessfully objected

to the removal.  Ultimately the district court entered summary judgment in favor of

American Family.[1]  Brownings appeal from both the merits and the procedural decisions.

We affirm.

## I.    BACKGROUND

A. The Policy

Brownings purchased a homeowner's insurance policy (the Policy) from

American Family.  The Policy was entitled "Colorado Homeowners policy - Gold Star

Special Deluxe Form" and was effective from January 18, 2004, to January 18, 2005.

(The Policy, Appellants' App. at 123.)  It "set[] forth, in detail, the rights and obligations"

of the Brownings and American Family.  (*Id.* at 124.)  American Family agreed to

provide a defense "[i]f a suit is brought against any insured for damages because of

bodily injury or property damage caused by an occurrence to which this policy applies"

---

[1] Both parties characterize the district court's judgment as a judgment as a matter of law (JMOL).  Contrary to this label, the parties specifically requested the district court enter judgment under Rule 56 (summary judgment), not Rule 50 (JMOL).  It is probably a distinction without a difference as the standard for deciding whether there is a "genuine" issue of material fact under Rule 56(c) "mirrors the standard for a [JMOL] under Federal Rule of Civil Procedure 50(a)." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

and "pay, up to [the limit of liability,] compensatory damages for which any insured is legally liable . . . ." (*Id*. at 133.) Relevant here, an "[o]ccurrence means an accident . . . which results . . . in: a. bodily injury; or b. property damage." (*Id.* at 125.) "Property damage means physical damage to or destruction of tangible property, including loss of use of this property." (*Id.* at 126.)

The Policy, however, excluded coverage for claims alleging "bodily injury or property damage caused intentionally by or at the discretion of any insured even if the actual bodily injury or property damage is different than that which was expected or intended from the standpoint of any insured." (*Id.* at 135.) Similarly, the Policy did "not cover bodily injury or property damage arising out of . . . violation of any criminal law for which any insured is convicted . . . ." (*Id.*)

B. Reichles' Claims[2]

The previous owner of Brownings' property erected a fence in 1984. In 1993, after Brownings purchased the property, their original neighbor complained the fence constituted an unintentional encroachment onto his property. He asked Brownings to move the fence "sometime in the near future." (July 28, 1993 Letter to Brownings, *Id*. at 174.) Brownings did not respond and the fence was never moved. Sometime thereafter Reichles purchased the neighboring property. They had the property surveyed in 2003. The survey revealed the existing fence improperly encroached onto Reichles' property to

---

[2] The factual description of the events between Brownings and Reichles comes from their pleadings filed in the Colorado state court case and only involve facts accepted by both parties.

the areal extent of approximately 30 feet by 300 feet.  Based on this information, Reichles sought to reclaim their land by hiring a company to destroy the old fence and erect a new one on the 2003 survey line.  This work began in February 2004.

Brownings immediately confronted the contractors and Reichles.  They entered upon the disputed property, removed the surveyor's stakes from the 2003 survey and "removed, stole, and/or converted . . . fencing materials."  (Reichles' Counterclaims, *Id.* at 166.)  The fence particularly enraged Michael Browning who attached multiple life-sized paper targets cut into the shape of human beings and "riddled with bullet holes" to a partially completed portion of the new fence.  (*Id.*)  His symbolic threats quickly escalated into outright violence.  In another incident, he approached the contractors with an assault rifle.  While yelling at them he fired at least one shot into the ground.  Fearing for their lives, the workers stopped work and left.  They returned accompanied by armed security guards.  They continued to see Brownings in the area; Michael, dressed "in full camouflage gear," continued to stalk them.  (*Id.* at 166-67.)

In the most notable incident, Reichles were at the work site with a contractor when Michael "charged from his property onto [the disputed property] armed with both a handgun and an assault rifle."  (*Id.* at 166)  He "shouted profanity and threatened to shoot the Reichles and the contractor if they came within six feet," "attempted to knock a camera out of the contractor's hands" and "then rapidly discharged between 15 and 30 rounds from his assault rifle."  (*Id.*)  Reichles immediately left and reported Michael's actions to the county sheriff.  Michael was criminally charged and ultimately pled guilty

to felony menacing[3] and unlawfully carrying a concealed firearm. Brenda Reichles suffered severe anxiety, high blood pressure, and continues to suffer long-term medical problems due to the stress of these events.

After Michael pled guilty, he and Deanna sued Reichles in Colorado state court to quiet title to the disputed property; he claimed title by adverse possession and sought damages for trespass and nuisance. Reichles denied the allegations and raised five counterclaims. Three claims—intentional[4] and negligent[5] infliction of emotional distress, and "theft and/or conversion"—named both Deanna[6] and Michael. The other counterclaims, for assault and trespass, named Michael alone. Describing Browning's

---

[3] The menacing charge (to which he pled guilty) alleged: "That [Michael Browning], in the State of Colorado, at or about the date and place charged, by threat or physical action, knowingly placed or attempted to place another person in fear of imminent serious bodily injury, by the use of a deadly weapon, to-wit: a firearm." (Appellants' App. at 182.)

[4] The elements of intentional infliction of emotional distress in Colorado (otherwise known as outrageous conduct) are: 1) the defendant engaged in extreme and outrageous conduct; 2) the defendant engaged in such conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and 3) defendant's conduct caused plaintiff to suffer severe emotional distress. *Culpepper v. Pearl Street Building, Inc.,* 877 P.2d 877, 882 (Colo. 1994) (emphasis added).

[5] Recovery of damages for negligent infliction of emotional distress in Colorado is limited to those who suffer emotional distress from being personally subjected to an unreasonable risk of bodily harm by virtue of the negligence of another. *Hale v. Morris*, 725 P.2d 26, 28 (Colo. Ct. App. 1986).

[6] Although Deanna Browning was specifically named as a defendant to the counterclaims and individually named in three of the claims, the parties have focused on American Family's duty to defend claims related to Michael's conduct. We do the same. *See Chacon v. Am. Family Mutual Ins. Co.*, 788 P.2d 748, 752 (Colo. 1990) (Policy provision stating coverage does not apply to intentional act "by any insured" bars recovery by an insured for an intentional act committed by a co-insured).

actions as extreme and outrageous, Reichles later requested punitive damages.[7]

C. Requests for Defense

After being served with the counterclaims, Brownings requested American Family to provide their defense as, they claimed, the Policy required. It denied their request in a letter dated September 11, 2006, stating the Policy insured only damages resulting from an "occurrence" or "accident" and the factual allegations in the pleadings contained only intentional or criminal actions, which were excepted from coverage. In addition, the Policy did not cover claims involving punitive damages and Brownings may not have timely notified American Family of the events as required by the Policy.

Brownings paid for their own defense. The lawsuit produced mixed results. The jury determined Brownings owned the disputed property and awarded $50,005 in actual damages for trespass by the Reichles and their agents. However, the jury also found for the Reichles on multiple claims – including their claims of trespass.[8] Specifically, the jury awarded nominal damages for the trespass claims, $5,000 in punitive damages for Michael's assault, $10,000 in punitive damages for Michael's intentional infliction of emotional distress, and $235,000 in actual damages for Michael's negligent infliction of

---

[7] In Colorado punitive or "exemplary damages . . . may not be included in any initial claim for relief," but "may be allowed by amendment to the pleadings only after the exchange of initial disclosures . . . and the plaintiff establishes prima facie proof of a triable issue." Colo. Rev. Stat. § 13-21-102(1.5)(a). The Reichles amended their counterclaims to seek punitive damages after the parties had exchanged initial disclosures.

[8] The record does not reflect an objection from either party on the jury's conclusions that both the Brownings and the Reichles trespassed upon the property of the other. As pled however, the alleged trespasses are not limited to the disputed property.

emotional distress.[9]

After the court entered judgment on the jury's verdict, Brownings asked American Family to reconsider its earlier decision and indemnify them for their attorney's fees and the damages awarded by the jury. American Family denied the second request in a May 9, 2007 letter. It stood by its earlier decision and noted indemnification was not required because the counterclaims and jury verdict involved punitive damages and intentional or criminal acts which did not result in bodily injury.

C. This Lawsuit

Brownings then sued American Family in Colorado state court for the alleged breach of its contractual obligations. American Family removed the case to federal court as it is permitted to do in a diversity case.[10] 28 U.S.C. § 1441. It filed a timely notice of removal with the federal court and provided a copy of the notice to the Brownings. However, it failed to file a copy of the notice with the state court. Brownings objected to the removal and argued it was ineffective. *See discussion infra* at Section II (D). The district court overruled the objection and refused to remand the case to state court.

The parties then stipulated to the relevant facts[11] and, upon the agreed facts, each

---

[9] The jury awarded no actual damages on the assault and intentional infliction of emotional distress claims. That seeming anomaly is not explained.

[10] Brownings are Colorado citizens; American Family, a corporation, has its primary place of business in Wisconsin. The claims exceeded $250,000.

[11] The stipulated facts included the Policy, the Colorado court pleadings, a partial transcript of Brenda Reichles' testimony from the Colorado state court case, and American Family's denial of coverage letters.

moved for summary judgment. *See* Fed Rule Civ. P. 56. After considering the briefs and arguments the district court entered summary judgment for American Family.

## II.    DISCUSSION

Brownings now contend the district court erred in three ways. On the merits, they contend the court wrongly determined a trespass in Colorado does not result in property damage as a matter of law and it erred in considering the intentional and negligent infliction of emotional distress claims collectively because the negligence claim, considered separately, gave rise to a duty to defend under the Policy. Finally, Brownings claim it should have remanded the case to state court because American Family failed to "promptly" file the removal notice as the statute requires. 28 U.S.C. § 1446(d).

A. <u>Substantive Claims</u>

1.  Standard of Review

"We review the grant of summary judgment de novo, using the same legal standard applied by the district court." *Apartment Inv. & Mgmt. Co. (AIMCO) v. Nutmeg Ins. Co.*, 593 F.3d 1188, 1192 (10th Cir. 2010). Summary judgment is only appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "The existence of [an insurer's] duty to defend against a particular claim is a question of law." *AIMCO*, 593 F.3d at 1193. "We are not bound to the district court's reading of [Colorado] contract law on summary judgment; our review is de novo. Nor are we limited to the ground relied upon by the trial court but may uphold summary judgment on conclusions of law supported by

the record." *City of Wichita, Kan. v. Sw. Bell Tel. Co.*, 24 F.3d 1282, 1286 (10th Cir. 1994) (citation omitted).

2. Duty to Defend

Generally, when determining whether an insurer has a duty to defend, "a trial court must restrict its examination to the four corners of the underlying complaint."[12] *McGowan v. State Farm Fire & Cas. Co.,* 100 P.3d 521, 523 (Colo. Ct. App. 2004). In determining the existence of a duty to defend, the court must compare the allegations of the underlying complaint (or complaints) with the relevant provisions of the insurance policy. *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991). "In the duty to defend context, the 'complaint rule' operates to cast a broad net, such that when the underlying complaint alleges *any facts* or claims that might fall within the ambit of the policy, the insurer must tender a defense." *Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294, 301 (Colo. 2003). If the insured can prove a claim arguably comes within coverage, the burden switches to the insurer to prove it does not.

---

[12] However, when an insurer "is aware multiple complaints arising from a common core of operative facts have been filed against the insured. . . . the insurer must consider such complaints in conjunction to make a good faith determination of its duty to defend." *AIMCO*, 593 F.3d at 1196. *AIMCO*, a Colorado diversity case, was decided after American Family filed its answer brief but before the Brownings filed their reply brief. Brownings relied on it in their reply brief arguing any coverage decision must include consideration of the facts alleged in Brownings' complaint as well as those recited in the counterclaims. Specifically, they argue their complaint against the Reichles claims ownership of the property was in dispute and thus, Michael's actions were in defense of his property, not an intentional trespass. American Family moved for leave to file a Sur-Reply Brief to address *AIMCO* and the Brownings' argument based upon it. We deny the motion; even assuming Michael reasonably believed he was defending his own property, the result is the same.

*Id.* Where the underlying complaint asserts multiple claims and any one claim is arguably covered by the policy, an insurer must defend against all claims. *Fire Ins. Exch. v. Bentley*, 953 P.2d 1297, 1300 (Colo. Ct. App. 1998).

Brownings argue two of the Reichles' counterclaims gave rise to American Family's duty to provide a defense: first, the trespass counterclaim could be construed as an "occurrence" because Michael accidently trespassed under the reasonable belief he owned the disputed property and, in doing so, he caused property damage; second, the counterclaims alleged negligent infliction of emotional distress, which does not require intentional harm. Pointing to the jury verdict, which awarded nearly all damages on the negligent infliction of emotional distress claim, Brownings maintain American Family had a duty to defend. Our consideration of the latter point is fleeting because the duty to defend turns on the Policy's terms and a reasonable assessment of the allegations in the counterclaim, not the ultimate result of the litigation.

The Policy does not require American Family to defend intentional acts or those resulting in a criminal conviction. Such limiting policy provisions seek "to prevent extending to the insured a license to commit harmful, wanton or malicious acts." *Am. Family Mut. Ins. Co. v. Johnson,* 816 P.2d 952, 957 (Colo. 1991). The relevant question, then, is whether the claims against Brownings alleged damages arising out of an intentional act or an accidental occurrence. "The dictionary defines 'accident' as 'an event or condition occurring by chance' or 'an unforeseen unplanned event or condition.'" *Mountain States Mut. Cas. Co. v. Hauser*, 221 P.3d 56, 59 (Colo. Ct. App. 2009) (quoting Webster's Third New International Dictionary 11 (2002)).

*a) Trespass*

We reiterate, American Family's duty to defend in this case turns on the allegations in the complaint and is measured by whether they are arguably within the Policy's coverage. *Hecla Mining Co.*, 811 P.2d at 1089. Reichles' trespass counterclaim named only Michael, stating he "intentionally and unlawfully entered upon the [Reichles'] property . . . [and] caused physical damage, by among other things, removing staked survey markers and indicators, and removing, stealing or destroying fencing materials." (Reichles' Answer and Counterclaims, Appellants' App. at 169.) In addressing Brownings' argument, repeated here, that the alleged property damage potentially brought the claim within the Policy's defense provisions,[13] the district judge concluded there was no duty to defend because "in Colorado trespass results in no bodily injury or property damage" as a matter of law, citing *Antolovich v. Brown Group Retail, Inc.*, 183 P.3d 582 (Colo. Ct. App. 2007). (Transcript of District Court's Ruling, Appellants' App. at 368).

In *Antolovich,* the relevant question was whether an intentional act was a required element of trespass; the court responded with an unequivocal yes. *Antolovich*, 183 P.3d at 602 ("Trespass is an intentional tort. Colorado's pattern jury instruction reflects an intent requirement for trespass." (citations omitted)). But the court did not say trespass

---

[13] "If a suit is brought against any insured for damages because of bodily injury or property damage <u>caused by an occurrence to which this policy applies</u>, we will provide a defense at our expense by counsel of our choice." (The Policy, Appellants' App. at 133 (emphasis added).)

- 11 -

cannot result in bodily injury or property damage as a matter of law; it only restated the elements of trespass, which do not require injury or damage. *Id.*[14]

Seizing on the district court's apparent mistake, and "admitting" the trespass involved damages to the Reichles' property, Brownings argue there was coverage under the Policy and a duty to defend because the land's ownership was disputed and, thus, the trespass was accidental. In their words, the property damage was "an unintended and unforeseen consequence stemming from the commonplace cause of Mr. Browning's entering what he thought was his own land and removing materials from it."[15] (Appellants' Opening Br. at 23.)

---

[14] Moreover, *Antolovich* noted the possibility that a trespass may occur when "a landowner . . . sets in motion a force which, in the usual course of events, will damage property of another." 183 F.3d at 603 (quotations omitted). We also recognize, in a diversity case, we follow decisions of the state's highest court; when none are available we try to predict how it would decide the issue. *See Pompa v. Am. Family Mut. Ins. Co.*, 520 F.3d 1139, 1142 (10th Cir. 2008). We are not bound by decisions of state intermediate appellate courts, so we consider *Antolovich* and other cases from the Colorado Court of Appeals only as they may aid our ability to predict how the Colorado Supreme Court might decide.

[15] Brownings cite numerous cases involving property disputes where courts have held that unintentional trespasses or unintended damages have given rise to a duty to defend by an insurance company. None of the cases involve Colorado law and are otherwise of no help because, unlike Brownings, the insureds seeking a defense had no knowledge of any property dispute and the consequences of their <u>actions</u> upon another's property were clearly unintended and unforeseeable. *See Lumber Ins. Co., Inc. v. Allen*, 820 F. Supp. 33, 37 (D.N.H. 1993) (harmful actions were "undertaken because of a mistaken belief grounded in fact that the conduct was authorized" when tortfeasor allegedly was unaware of proper boundary); *Gibson v. Farm Family Mut. Ins. Co.*, 673 A.2d 1350, 1353 (Me. 1996) (involving a possible claim for loss of land "resulting from an unintentional act"); *Lyons v. State Farm Fire & Cas. Co.*, 811 N.E.2d 718, 722 (Ill. App. 2004) (court was "unable to find any allegations that even suggest[ed] that Lyons expected or intended" to encroach on his neighbor's property).

Accepting, arguendo, that the alleged property damage is compensable in a trespass claim such as this, Brownings' arguments fail to recognize that, in Colorado, "[t]respass is an intentional tort." *Antolovich*, 183 P.3d at 602. "[L]iability for trespass requires only an intent to do the act that itself constitutes, or inevitably causes, the intrusion." *Burt v. Beautiful Savior Lutheran Church of Broomfield, Colo.*, 809 P.2d 1064, 1067 (Colo. Ct. App. 1990); *see also Hoery v. United States*, 64 P.3d 214, 217 (Colo. 2003) ("A landowner who sets in motion a force which, in the usual course of events, will damage property of another is guilty of a trespass on such property."); and *Antolovich*, 183 P.3d at 602 ("[A] person is liable for trespass . . . if he or she *intentionally* enters the land possessed by someone else, or causes a thing or third person to enter the land."). Colorado courts do not "recognize the tort of negligent trespass." *Burt*, 809 P.2d at 1067 (quotations omitted).

"An insurance policy protects the insured against risks outside of the insured's control. The intentional exclusion excludes from coverage risks that the insured can consciously control." *Johnson*, 816 P.2d at 958. Michael Browning may have firmly believed he owned the disputed property and had a right to "protect" his interest, but according to the allegations of his complaint and, more particularly Reichles' counterclaims, he knew the boundary was disputed. Nevertheless, he resorted to an extreme form of self-help—he intentionally entered upon the disputed land (perhaps only a technical trespass or not a trespass at all). But the gravamen of the trespass counterclaim was not the entry itself but the intentional acts of removing survey stakes,

- 13 -

and converting or destroying Reichles' fencing materials.[16] These acts are not covered by the Policy. And the duty to defend only extends to covered claims. *See infra* at n.13. Browning's actions were no "accident." American Family had no obligation to provide a defense to the trespass claim.

### b) *Intentional and Negligent Infliction of Emotional Distress*

In Colorado, a claim for negligent infliction of emotional distress requires a showing "that defendant's negligence subjected [plaintiff] to an unreasonable risk of bodily harm and caused her to be put in fear for her own safety, that plaintiff's fear was shown by physical consequences or long-continued emotional disturbance, and that plaintiff's fear was the cause of the damages she claimed." *Scharrel v. Wal-Mart Stores, Inc.*, 949 P.2d 89, 93 (Colo. App. 1997). The factual allegations supporting Reichles' counterclaim were the same for both negligent and the intentional infliction of emotional distress[17] claims, including but not limited to: Michael's verbal and physical threats (including the dramatic placement of a bullet riddled human silhouette on the fence), rapid-fire discharge of the assault rifle in the immediate vicinity of the Reichles, and threats to shoot them.

Brownings focus solely on the title of the claim, negligence. They concede part of the negligent emotional distress claims were "predicated on [Michael's] threat to shoot

---

[16] A fair reading of the complaint plainly shows the entry upon the property and damage to Reichles' property involved – in the words of the Policy – "property damage caused intentionally by or at the discretion of [Brownings.]" (The Policy, Appellants' App. at 135.)

[17] *See supra* n.4 (elements of intentional infliction of emotional distress).

- 14 -

the Reichles and his eventual firing of his rifle in the Reichles' presence." (Appellants' Opening Br. at 28.) But they argue "even if the Reichles' counterclaims for negligent and intentional infliction of emotion distress were premised upon the same conduct, it remained possible for a jury to determine that Mr. Browning did not intend to cause the Reichles' ensuing emotional harm . . . " and it is thus covered by the Policy. (Appellants' Reply Br. at 21.) To emphasize this point, they note the jury awarded significantly more damages on the negligent infliction claim than on the other claims.

In addition, they maintain that on one occasion Michael merely "shouted profanities and fired a rifle into the air several times (not at Reichles)," and these actions do not necessarily imply "he intended to cause them any physical or emotional harm." (Appellants' Opening Br. at 31.) According to Brownings, American Family should have interpreted those discrete factual allegations as a separate event alleging only an attempt to prevent Reichles from building the fence with no intent to cause any physical bodily injury.

Brownings raised this same argument to the district judge. Taking a less myopic view, she rejected the argument and concluded "[h]ere the Reichles' intentional infliction of emotional distress and negligent infliction of emotional distress claims are substantively identical. The conduct that underlies both of those are inseparable . . . . The inseparability of the factual allegations, coupled with [Michael's] admitted intentional acts, necessarily invokes the intentional acts exclusion of the contract." (Transcript of District Court's Ruling, Appellants' App. at 370-71.) Her analysis was correct. Michael's argument to the contrary defies logic and fails to recognize that the

- 15 -

"separate incident" in the counter claims he references actually alleges he "shouted profanity and threatened to shoot the Reichles and the contractor if they came within six feet." (Appellant's App. at 166.) He also ignores this occasion closely followed: his threats (particularly the bullet riddled silhouette), his stalking of the contractors, and his theft and/or destruction of Reichles' personal property. If not intentional, Michael's actions were clearly reckless. *See supra* at n.4 (intentional infliction of emotional distress in Colorado includes reckless acts). The jury's finding of only negligent infliction of emotional distress is not relevant to our determination, which focuses exclusively on the allegations in the counterclaims. Those allegations cannot be fairly read to allege simple negligence.

Furthermore, the negligence claim against Michael is not within the policy for an independent reason. The Policy excludes claims for "bodily injury . . . arising out of . . . a violation of any criminal law for which any insured is convicted . . . ." (The Policy, Appellants' App. at 135.) Brownings concession that the emotional distress claims were predicated on threats to shoot Reichles and his eventual firing of his rifle in their presence links these claims to his guilty plea to felony menacing. The negligent infliction of emotional distress claim (and resulting bodily injury) arose from Michael's criminal acts. The Policy excludes such claims from coverage and consequently, imposes no duty on American Family to defend against them.

3. Conclusion as to Substantive Claims

American Family had no duty to defend Brownings against the Reichles' counterclaims. Because "the duty to defend is broader than the duty to indemnify" in

- 16 -

Colorado, we need not consider whether American Family had a duty to indemnify Brownings for the damages awarded by the jury. *Hecla Mining Co.*, 811 P.2d at 1089.

B. <u>Procedural Claim</u>

1. Motion to remand

Eighteen days after receiving the notice of removal, Brownings informed American Family they intended to ask the federal court to remand the case to state court because the notice of removal had not been "promptly" filed in state court as required by 28 U.S.C. § 1446(d). Noting a proper filing in the federal court and timely notice to Brownings, American Family explained the failure to file a copy of the notice with the state court was merely an oversight by a legal assistant; it filed a copy of the notice of removal with the state court the same day. Nevertheless, Brownings asked the federal court to remand the case to state court, arguing American Family did not "promptly" file the notice of removal with the state court clerk and thus the district court had no authority to exercise its subject matter jurisdiction. The court denied the motion concluding American Family's filing of the notice in state court was "sufficiently prompt to satisfy the purposes of 28 U.S.C. § 1446(d)" as there was no action taken by the state court during the relevant period and neither party had been negatively affected by the delay. (District Court Order Denying Motion to Remand, Appellants' App. at 117.)

Under 28 U.S.C. § 1446(d) removal is effected by the defendant's taking three procedural steps: filing a notice of removal in federal court, giving prompt written notice to adverse parties and filing a copy of the notice in state court. Each step provides important notice to a relevant actor: the federal court, the adverse parties, and the state

court.  Federal courts have remanded cases based upon a showing of prejudice to one of these three actors arising from the failure to provide notice.

"This court has jurisdiction over a denial of a motion to remand to state court when coupled with the appeal of a final judgment."  *Huffman v. Saul Holdings Ltd. P'ship.*, 194 F.3d 1072, 1076 (10th Cir. 1999).  We review de novo the district court's interpretation of the removal statute and its refusal to remand.  *Id.* ("Because removal is an issue of statutory construction, we review a district court's determination of the propriety of removal de novo."  (quotations omitted)).  However, a defect in the removal procedure, standing alone, is not sufficient to warrant vacating judgment and remanding to state court if subject matter jurisdiction existed in the federal court.  *Id.* at 1080.  And while "[t]he procedural requirements for removal remain enforceable by the federal trial court judges," *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 77 (1996), "[o]nce a diversity case has been tried in federal court, with rules of decision supplied by state law . . .[,] considerations of finality, efficiency, and economy become overwhelming."  *Id*. at 75 (citation omitted).  This result would be the same "whether judgment is based on the outcome of a trial or a district court's ruling on a dispositive motion."  *Huffman*, 194 F.3d at 1080*; see also Springer v. Hustler Magazine*, 198 F.3d 258 (10th Cir. 1999) (unpublished) (where "the notice of removal was untimely, the district court's failure to remand to state court is not reversible error unless the district court improperly granted summary judgment for defendants").[18]

_____

[18] Unpublished opinions are not binding precedent.  10th Cir. R. 32.1(A).  We

- 18 -

Brownings concede there was complete diversity at the time of the judgment and therefore the federal court had subject-matter jurisdiction.[19]  They also acknowledge if we determined the district court properly granted summary judgment in favor of American Family, reversal based on American Family's alleged failure to "promptly" file the notice of removal in state court is unwarranted.  (Appellant's Reply Br. at 22.)

The judgment of the district court is **AFFIRMED**.  American Family's motion to file a sur-reply brief is **DENIED**.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

---

mention *Springer* as we would any other non-binding source, persuasive because of its reasoned analysis.

[19] "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).